58 April 19, 2018 No. 4

# IN THE OREGON TAX COURT
## REGULAR DIVISION

Leslie SCOTT,
*Plaintiff,*

*v.*

## DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5192)

Plaintiff (taxpayer) appealed a decision from the Magistrate Division as to certain claimed deductions on his income tax return. At trial taxpayer was unable to substantiate many of his claims. Taxpayer also failed to provide evidence supporting his claims or to show that the department's actions were improper. The court held that taxpayer failed to substantiate the losses and expenses claimed for his businesses or rental properties; that the department proved that taxpayer had income from gambling winnings in the amounts reported for certain tax years; that taxpayer did not substantiate any gambling losses for tax years 2007 or 2008; and that the evidence did not support any increase in the number of dependency exemptions taxpayer claimed for tax years 2007 or 2008. The court also ruled that taxpayer's request for the court to use the federal *Cohan* rule was inappropriate because taxpayer had provided insufficient evidence to do so. The court finally concluded that the penalties assessed by the department were appropriate.

Trial was held July 17, 2017, in the courtroom of the Oregon Tax Court, Salem.

Plaintiff Leslie Scott (taxpayer) argued the cause *pro se*.

James C. Strong, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department)

Decision for Defendant rendered on April 19, 2018.

**HENRY C. BREITHAUPT, Senior Judge.**

## I. INTRODUCTION

This personal income tax case is before the court after trial.[1] The tax years at issue are 2007 and 2008. Plaintiff Leslie Scott (taxpayer) appeals from notices of deficiency assessment for each year issued by Defendant Department of Revenue (the department).

---

[1] Trial was held on July 17, 2017.

## II.   FACTS

The record in this case comprises taxpayer's exhibits 3, 4, 10, 13, and 15; the department's exhibits A, B, C, D, E, F, H, I, and K; and the testimony of taxpayer, taxpayer's accountant Toni Ellsworth (Ellsworth), and the department's auditor Alex Anderson (Anderson). The court will present the relevant evidence and facts for each year.

A.   *Tax Year 2007*

1.   *Taxpayer's Return as Filed*

Taxpayer's 2007 federal income tax return (2007 federal return) was dated July 11, 2011. The department contends that taxpayer filed his 2007 Oregon income tax return (2007 state return) at the same time. There is no record of that—the 2007 state return included in Defendant's Exhibit C is undated and unsigned. Nevertheless, taxpayer admits that his 2007 state return was filed late.

On taxpayer's 2007 state return, he reported $44,145 of income attributable to W-2 wages from Cognitive Enrichment Concepts.

On his 2007 federal return, taxpayer reported gross receipts of $34,505 on a Schedule C for Scott's Quality Care,[2] a business taxpayer is involved with. Taxpayer deducted $34,505 of other expenses, which were described as "TURNED OVER TO DEBRA."

Taxpayer informed the court that Debra was his wife, Debra J. Scott. They have since separated, the details of which are not the proper subject of this opinion. Suffice it to say, the testimony in this case is that at least some of taxpayer's documentation issues stem from the facts and circumstances of that separation.

Also on taxpayer's 2007 federal return, taxpayer reported $14,418 of rents received on a Schedule E for property in Coos Bay, Oregon. On line 18 of that Schedule E, taxpayer deducted $14,418 of other expenses, which were similarly described as "turned over to Debra."

---

[2] That business is also referred to by taxpayer as Scott's Quality Care Homes, Inc.

2.   *The Department's Audit*

The department audited taxpayer's 2007 state return, concluding that audit on August 22, 2011. The auditor made the following adjustments:[3]

- Disallowed the expenses of $34,505 and $14,418 reported on Schedules C and E as turned over to Debra.

- Added $963,493 in gambling winnings based on records received from taxpayer.

- Deducted $963,493 in gambling losses, an itemized deduction, and therefore denied the standard deduction claimed by taxpayer.

- Allowed $2,438 for the self-employment tax deduction.

- Computed substantial understatement of income and post-amnesty penalties totaling $1,957.05.

The total amount of tax due on the auditor's report was $4,349, plus penalties of $1,957.05, for a total of $6,306.05. Taxpayer did not pay the amount due.

Thereafter, the department issued a notice of deficiency assessment. That notice identified the amount of tax due ($4,349); the amount of penalties including a 5 percent penalty for failure to pay ($2,174.50); and the amount of interest on the unpaid tax ($1,053.33). In total, the notice informed taxpayer that he owed $7,576.83. Taxpayer appealed from that notice to this court.[4]

3.   *The Department's Position in this Case*

In the department's Answer, it asserted a claim under ORS 305.575 to adjust the amount of gambling winnings determined by its auditor and disallow the offsetting

---

[3] Anderson, who testified at trial, was not the same auditor who audited taxpayer's returns. The original auditor no longer works for the department. The court's findings in this matter are based upon the auditor reports found in the department's exhibits.

[4] Taxpayer first appealed to the Magistrate Division before appealing the magistrate's decision to the Regular Division. Taxpayer received some but not all of the relief he requested in the Magistrate Division.

gambling losses determined by its auditor.[5] At trial, the department introduced a wage and income transcript from the Internal Revenue Service (IRS), which listed W2-Gs totaling $189,208. The department also asserted that taxpayer could not prove any gambling losses (an itemized deduction), and, accordingly, the standard deduction should be allowed to taxpayer.

### 4.  *Taxpayer's Position in this Case*

Taxpayer does not dispute the amount of gambling winnings for 2007. Taxpayer does, however, claim gambling losses. In support of that claim, taxpayer introduced annual activity reports from various casinos that show those casinos' records of taxpayer's total winnings and losses for the year. Taxpayer also introduced ATM receipts, account statements, and canceled checks purportedly showing money withdrawn for gambling purposes.

Taxpayer also claims, and introduced evidence attempting to show, that he had expenses for his Schedule C gross receipts and Schedule E rents. Taxpayer also claims that the rents he received for a property referred to as the North Eighth Property should have been split between him and Debra Scott. That evidence, and other evidence relevant to the 2007 year, will be addressed in the analysis portion of this opinion.

### A.  *Tax Year 2008*

### 1.  *Taxpayer's Return as Filed*

Taxpayer's 2008 Oregon income tax return (2008 state return) was dated June 8, 2010.

---

[5]  ORS 305.575 (2015) provides:

"In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department, provided that claim for such additional tax on other or different grounds is asserted by the department before or at the hearing or any rehearing of the case before the tax court. In the event such other or different grounds are asserted by the department, the opposing party shall be allowed additional time, not less than 10 days, within which to amend or otherwise plead thereto, which additional time, however, may be waived by stipulation of the parties. The order of the tax court shall be sufficient for the collection by the department of the entire amount found by the court to be owing and due."

On taxpayer's 2008 state return, he reported $55,490 of income attributable to W-2 wages from "Debra J Scott."

Unlike in 2007, taxpayer did not file either a Schedule C or a Schedule E with his 2008 federal income tax return (2008 federal return). He reported no business receipts or rents received in 2008.

2. *The Department's Audit*

The department audited taxpayer's 2008 state return, concluding that audit on August 22, 2011. The auditor made the following adjustments:

- Added $1,162,775 in gambling winnings.

- Deducted $1,162,775 in gambling losses, an itemized deduction, and therefore denied the standard deduction claimed by taxpayer.

- Added $14,306 in capital gains.

- Added $835 in dividends.

- Added $844 in interest.

- Added $23,620 in "medical payments" reported on a form 1099-MISC.

- Added $15,920 in rents.

- Allowed $1,669 for the self-employment tax deduction.

- Computed a substantial understatement of income penalty of $1,024.

The total amount of tax due on the auditor's report was $5,120, plus the penalty of $1,024, for a total of $6,144. Taxpayer did not pay the amount due.

Thereafter, the department issued a notice of deficiency assessment. That notice identified the amount of tax ($5,120); the amount of penalties including a 5 percent penalty for failure to pay ($1,280); and the amount of interest on the unpaid tax ($817.67). The total amount due was $7,217.67.

### 3.   *The Department's Position in this Case*

As it did for tax year 2007, the department asserted a claim under ORS 305.575 in its Answer to adjust the amount of gambling winnings determined by its auditor, and to disallow the offsetting gambling losses determined by its auditor. At trial, the department introduced a wage and income transcript from the IRS, which listed W2-Gs totaling $223,141. The department also asserted that taxpayer could not prove any gambling losses (an itemized deduction), and, accordingly, the standard deduction should be allowed to taxpayer.

### 4.   *Taxpayer's Position in this Case*

Taxpayer does not dispute the amount of gambling winnings, capital gains, dividends, or interest for 2008. Taxpayer does dispute the status of the "medical payments" as being received by him, and he disputes the total amount of rents attributable to him from the North Eighth Property. He also claims expenses for his various businesses and properties.

Taxpayer also claims gambling losses. In support of that claim, taxpayer introduced annual activity reports from various casinos that show those casinos' records of taxpayer's total winnings and losses for the year. Taxpayer also introduced various ATM receipts, account statements, or canceled checks purportedly showing money he withdrew for gambling purposes.

This evidence, and other evidence relevant to 2008, will be addressed in the analysis portion of this opinion.

## III.   ISSUES

The first issue in this case is whether taxpayer received $23,620 in "medical payments" reported on a form 1099-MISC using his social security number for 2008. The second issue is whether taxpayer substantiated any business expenses or income allocation for his various businesses and rental properties in 2007 and 2008. The third issue is whether the department proved taxpayer's gambling winnings for 2007 and 2008. The fourth issue is whether taxpayer substantiated any gambling losses for 2007 and 2008.

The fifth issue is whether taxpayer substantiated any additional dependency exemptions not reported on his 2007 and 2008 returns. The sixth issue is whether the department correctly assessed penalties against taxpayer.

## IV.   ANALYSIS

The court will address each issue in turn, but two preliminary matters must first be addressed.

First, the court considers the weight and persuasiveness of the evidence introduced in this case. Taxpayer has introduced various documents, as has the department. The court finds some of those documents extremely helpful. However, the court did not find the trial balances and income statements provided by taxpayer in Exhibits 3 and 4 to be helpful because taxpayer failed to attach any supporting documentation.[6] The court received testimony that some amounts in these statements may pertain to activities for other entities and some amounts may be attributable at least in part to Debra Scott. The court ascribes no weight to these documents.

With respect to testimony, the court does not find helpful or credible the testimony of taxpayer concerning income or expense amounts. The court recognizes that the tax years and most of the events in this case occurred approximately 10 years prior to trial. The court also understands that this was a traumatic and difficult time of taxpayer's life, and that he scrambled to make ends meet after the separation between him and his then-wife, which also coincided with the economic collapse in the real estate market.

Yet even when the court views the evidence with that in mind, the testimony of taxpayer was muddled, confusing, and at times contradictory. In several key respects, taxpayer either could not remember certain information,

---

[6] The court received testimony from Ellsworth that the invoices for these exhibits were either destroyed or in the possession of Debra Scott. The exhibits were created primarily from bank payment records, which were not introduced into the record. There are some bank records included in Exhibit 10, but they appear to be personal bank records and were introduced to show that he withdrew money for gambling purposes.

never knew certain information (because his wife handled many of the business affairs), or contradicted or "clarified" his testimony after discussion with his accountant. The court does not find that taxpayer was testifying in bad faith, but the court affords extremely little weight to taxpayer's testimony concerning income or expense items.

With respect to taxpayer's accountant, Ellsworth, the court also affords extremely little weight to her testimony. Ellsworth was not associated with or employed by taxpayer, or otherwise present during the years at issue. Moreover, her testimony was also confusing and at times contradictory, either with respect to her testimony, taxpayer's testimony, or other evidence in the record.[7] While, again, the court does not find that Ellsworth was testifying in bad faith, the court has no confidence in the veracity of her testimony.

To that end, the court relies almost entirely upon the exhibits introduced in this case.[8] Where necessary, the court will also comment upon the testimony of taxpayer or Ellsworth. The second preliminary matter the court addresses is the law at issue in this case. Taxpayer does not dispute the legal basis for including any items in his income, the legal basis for requiring substantiation of his expenses, or the legal basis for the penalties assessed by the department. Accordingly, in large part, this case turns upon whether taxpayer has provided sufficient evidence for the court to find in his favor.

In that regard, taxpayer asks the court to apply the rule found in *Cohan v. Commissioner*, 39 F2d 540, 543-44 (2d Cir 1930). That case provides that a court may estimate the amount of expenses that a taxpayer has incurred if there is some evidence of that expense. *Id.* at 544. The rule is limited, however, to situations where the taxpayer has provided sufficient evidence for the court to make a

---

[7] For example, Ellsworth testified that taxpayer was not paid by Cognitive Enrichment Concepts in 2007, but the IRS wage and income transcript shows that he was paid $44,145, reported on a form W-2. That amount exactly matches the amount reported as wages on taxpayer's 2007 state and federal returns.

[8] The department's auditor, Anderson, was primarily called upon to identify and explain the department's exhibits.

reasoned approximation of the expenses incurred.[9] *Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985). If the court lacks a threshold amount of evidence, the court cannot simply guess at the amount of expense; to do so would be "unguided largesse." *Norgaard v. Comm'r*, 939 F2d 874, 879 (9th Cir 1991), (quoting *Williams v. United States*, 245 F2d 559, 560 (5th Cir 1957)). Because taxpayer has failed to provide sufficient evidence to guide the court in any application of the estimation rule in *Cohen*, it provides no relief for taxpayer.

A.  *Medical Payments from Department of Human Services*

The department's auditor determined that taxpayer failed to report $23,620 in "medical payments" reported on a form 1099-MISC from the Department of Human Services in 2008. Taxpayer is listed as the recipient.

Taxpayer asserts in his closing argument that these payments, and $34,505 in payments for 2007 reported on his Schedule C as turned over to Debra Scott, were erroneously attributed to him. Taxpayer asserts that they were actually payments from Medicaid on behalf of his mother, which were paid to Scott's Quality Care, a business purportedly owned in equal shares by taxpayer and Debra Scott, for medical care.

No record was made on this point at the hearing, by testimony or otherwise. The court finds that the 1099-MISC demonstrates that taxpayer received these payments. Without persuasive testimony *and documentation* showing that the payments actually were turned over to taxpayer's business, the court finds that these amounts were received by taxpayer.

B.  *Business Expenses*

Taxpayer claims that he has several expenses that should be deducted against his income for a variety of businesses and endeavors. Those businesses and endeavors are Scott's Quality Care, Les Scott Construction, LLC, Cognitive Enrichment Concepts, LLC, the Coos Bay condos, the North

---

[9] The rule also does not apply in all circumstances. For example, the *Cohan* rule does not apply to travel or gift costs. *See* IRC § 274(d); *Sanford v. Comm'r*, 50 TC 823, 827-28 (1968), *aff'd*, 412 F2d 201 (2d Cir 1969).

Eighth property, and the Bend property. The court will discuss these in turn.

1.  *Scott's Quality Care*

Taxpayer testified that Scott's Quality Care provides medical and other assistance to its clients. The only income appearing on taxpayer's return arguably related to this business is the medical payments just discussed. As just determined, the court considers the medical payments from the Department of Human Services to be paid to taxpayer, not to Scott's Quality Care. However, even if the court determined that the medical payments were attributable to Scott's Quality Care, no adjustment would be warranted.

First, taxpayer has not carried his burden to show that those medical payments—if they were attributed to Scott's Quality Care—must be split between taxpayer and his wife. Taxpayer testified that he and his wife each owned 50 percent of the business, but taxpayer failed to introduce any documentation to that effect.

Second, taxpayer has not proven any expenses. Taxpayer only relies upon the profit and loss statements that the court has previously stated are not reliable. Taxpayer testified that he has evidence of the expenses shown on those statements, but he did not know that he needed to introduce them when he was already submitting his profit and loss statements.

In an appropriate instance, such as one in which audited or otherwise reliable financial statements are produced and the subject of competent testimony, the court might consider relying upon the financial statements of a taxpayer as proof of expenses. However, that is not the situation before the court. It is worth noting that the magistrate appears to have allowed some expenses for Scott's Quality Care. However, the Magistrate Division decision makes clear that the magistrate had evidence and testimony of such expenses before her. The Regular Division reviews cases *de novo*, and cannot rely upon a magistrate's previous finding in this regard. ORS 305.425.

Taxpayer asks the court to apply the *Cohan* rule. However, as previously described, that is a rule of limited

application. The court is not convinced that there is sufficient evidence upon which it can estimate expenses in this regard.[10] In making this conclusion, the court is cognizant that there must surely have been *some* expenses. However, that awareness is insufficient to allow application of the *Cohan* rule. *Cf. Gudenschwager v. Comm'r*, 56 TCM (CCH) 1010 (1989).

No adjustment for 2007 or 2008 is warranted on the basis of this evidence.

2.  *Les Scott Construction, LLC*

The only business for which taxpayer provided any organizational documents is Les Scott Construction, LLC. The operating agreement for this company shows that taxpayer was the only member at its formation, with a capital contribution of $1,000. Taxpayer testified that this business had no income, only expenses. That comports with taxpayer's profit and loss statements for 2007 and 2008, but the court affords no weight to those statements.

As previously explained, there is no supporting documentation for those profit and loss statements, and, regardless, the statements themselves are not reliable. For example, one item listed under other expenses is described as "Ask My Accountant." Another item, described as "Mortgage Broker Kennedy Funding"—for $64,000 in 2007 and $13,885 in 2008—was incurred to broker a loan agreement for Bayshore Townhomes, LLC. That is a different entity from Les Scott Construction, LLC, and one with which, as will be seen, taxpayer is not affiliated in any material way.

No adjustment to taxpayer's 2007 or 2008 state returns is warranted on this evidence.

3.  *Cognitive Enrichment Concepts, LLC*

Taxpayer received wages from Cognitive Enrichment Concepts, LLC in 2007, which were reported on a form W-2. Taxpayer testified that Debra Scott owned the

---

[10] The court understands taxpayer's request to relate to the medical payments. Although the court discusses this request as part of its discussion regarding Scott's Quality Care, the court makes the same conclusion regarding any application of the *Cohan* rule to taxpayer's medical payments received.

business and taxpayer managed it. Taxpayer also testified that he incurred expenses as part of his work with this company. Even if the court found such testimony credible, taxpayer did not sufficiently identify the types or amounts of employee expenses he incurred. No adjustment to taxpayer's 2007 or 2008 state returns is warranted on this evidence.

4. *Coos Bay Condos*

Taxpayer testified that he incurred expenses for condos in Coos Bay with respect to certain mortgage payments he made. Those condos were owned by Bayshore Townhomes, LLC.

Taxpayer was not a member or owner of Bayshore Townhomes, LLC. Taxpayer was only involved with Bayshore Townhomes, LLC as a guarantor of a loan for the LLC to purchase condos in Coos Bay. Taxpayer was also in charge of some construction activities relating to those condos through Les Scott Construction, LLC.

Taxpayer does not have any income attributable to him from Bayshore Townhomes, LLC or the condos. Taxpayer claims he should be able to deduct the mortgage payments he made. Taxpayer did not provide any documentation showing what amount of mortgage interest he might be able to deduct, or even conclusive proof that he made any payments. Further, he has not persuasively shown that the mortgage was an expense of any person or entity other than the borrower, Bayshore Townhomes, LLC. Assuming taxpayer did make certain mortgage payments as a loan guarantor, taxpayer has not shown why such payments should be deducted from his income for 2007 or 2008.

On this evidence, the court finds no adjustment is warranted for 2007 and 2008.

5. *The North Eighth Property*

Taxpayer testified that, while he did dispute receiving rents in the amount of $14,418 in 2007, he did not receive any rents for 2008. That testimony conflicts with the IRS wage and income transcript. It also conflicts with taxpayer's testimony on two separate occasions that he received rental income in 2007 *and* 2008 for this property. The court finds

that taxpayer received rents of $14,418 for 2007 and $9,967 for 2008 for the North Eighth property.

Taxpayer argues that the rental income should be split between him and Debra Scott. Taxpayer's accountant testified that the form 1099s reporting the rental income represented the total amount of rents paid for the property. Taxpayer and his accountant testified that the ownership of this property was split between him and Debra Scott. Taxpayer accordingly argues that Debra should be responsible for half of the rents.

However, taxpayer introduced no evidence of the purchase documents for the North Eighth Property or other independent documentation of the ownership and allocation of income or expenses for the property. In addition, notwithstanding the testimony described above, taxpayer has provided no independent confirmation that the only rents received for the property for the years were $14,418 for 2007 and $9,967 for 2008. The court will not find, solely on unreliable and conflicting testimony, that those amounts were the entire rents for the years.

Regardless, even if they were the entirety of the rents received, taxpayer has not provided any independent documentation (such as the loan agreement or deed) that shows that he actually did purchase the property with Debra Scott. Therefore, the court has no basis to determine that the rents should be split between taxpayer and Debra Scott.

Taxpayer testified that he incurred expenses for this property, but provided no documentation of such, even as to profit and loss statements. Taxpayer has not provided any reliable documentary evidence upon which the court could determine, or even estimate, the amount of expenses incurred for this property. Taxpayer claims he withdrew certain amounts for expenses, reported as a draw against owner's equity on the trial balance statements for Scott's Quality Care. However, the court does not find this evidence persuasive. First, as discussed, the court does not consider the trial balance statements to be reliable. Second, regardless, there is no independent proof (such as a statement of

account) that taxpayer made those payments. Accordingly, no adjustment is warranted for 2007 or 2008.

### 6. *The Bend Property*

Taxpayer received rents of $5,953 in 2008 for property he purchased in Bend. When he purchased the property is unclear. At trial, taxpayer testified that he purchased the property and put it into service in 2008. However, taxpayer introduced evidence of cleanup costs on that property to prepare it for renting in the form of an invoice. Those costs were incurred in 2007. When this was addressed at trial, taxpayer changed his testimony—he testified that maybe he purchased it in 2007, but he did not place it into service until 2008.

Taxpayer wishes to deduct expenses for this property, including the costs incurred for cleanup. Taxpayer testified that the property "was in poor repair" when he purchased it "on contract." It needed "a lot of cleanup" before it could be rented. Accordingly, the cleanup costs in 2007 should be capitalized as part of the cost of acquisition, not deducted.[11] *See Haeder v. CIR.*, 81 TCM (CCH) 987 (TC 2001); *Stoeltzing v. CIR*, 266 F2d 374, 377 (3d Cir 1959). Moreover, to the extent that taxpayer made mortgage payments or incurred other expenses for this property, he has provided insufficient evidence to the court to determine what amounts were paid. No adjustment is warranted.

### 7. *Conclusion as to Expenses*

The court makes no adjustment to 2007 or 2008 for either expenses or losses with respect to the companies or properties above.

---

[11] Some of the items listed in Exhibit 15 *might* have been considered deductible, such as painting. *See Kaonis v. CIR*, 37 TCM (CCH) 692 (TC 1978) (stating painting costs were not capital in nature because they added no value to the property when it was already tenantable). However, the invoice in Exhibit 15 only lists a sum total of the costs billed and paid to clean up the property, and the court received no testimony on the cost of the individual items listed. In addition, the record supports a finding that the Bend property was not tenantable before taxpayer incurred these cleanup costs, making this case factually different from *Kaonis*. Taxpayer stated the invoice in Exhibit 15 was the only record he had, implying that taxpayer incurred other costs necessary to rehabilitate the property and prepare it for service as a rental property.

C.  *Gambling Winnings*

With respect to taxpayer's gambling winnings, the department has reduced the amount determined by audit. The amount determined by audit was based upon various records provided by taxpayer. At trial, the department rested solely on the W2-Gs reported by various casinos as shown on the wage and income transcripts obtained from the IRS. Based on those transcripts, the court finds that taxpayer had gambling winnings in the amounts of $189,208 for 2007 and $223,141 for 2008.

D.  *Gambling Losses*

Taxpayer claims gambling losses to offset his gambling winnings. Taxpayer is allowed to deduct gambling losses pursuant to Internal Revenue Code (IRC) § 165(d).[12] That section provides: "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." IRC § 165(d).

IRC § 165(d) has been interpreted by the federal courts as requiring casual gamblers to calculate their wins or losses on a "per-session basis." *Park v. Comm'r*, 722 F3d 384, 386 (DC Cir 2013); *see also Shollenberger v. Comm'r*, 98 TCM (CCH) 667 (2009), 2009 WL 5103973 at *2 (US Tax Ct). With respect to slot machines—the type of gambling wager at issue in this case—the end of a session can be considered to be when a taxpayer redeems or otherwise "cashes out" any tokens or credits. *See Shollenberger*, 2009 WL 5103973 at *2 (quoting Chief Counsel Attorney Mem 2008-011 (Dec 5, 2008)). The IRS recommends keeping a log of gambling activity to substantiate gambling winnings and losses. Rev Proc 77-29, 1977-2 CB 538; *see also Mayer v. Comm'r*, 80 TCM (CCH) 393 (Sept 20, 2000).

Taxpayer, however, kept no log of his gambling activity for the years at issue. In support of his argument that he incurred gambling losses, taxpayer introduced casino activity reports for Spirit Mountain Casino for 2007 and 2008, The Mill Casino for 2007 and 2008, and Caesars Entertainment for 2008. Taxpayer also introduced various ATM receipts,

---

[12] The court's reference to the IRC is to the 2007 and 2008 versions of the IRC.

canceled checks, and bank statements. Taxpayer argues that those documents sufficiently prove that he incurred gambling losses for 2007 and 2008. Taxpayer accordingly requests that the court apply the *Cohan* rule and estimate gambling losses for him.

Taxpayer's casino reports are not reliable. Those reports, by their very terms, are not intended to be a complete or even an accurate record of gambling activities. They only track specific gambling activity, and they do not include hand-paid jackpots.[13]

Taxpayer's receipts, canceled checks, and bank statements are also not persuasive. Taxpayer failed to keep a gambling log in this case, and because the court does not find taxpayer's testimony reliable, the court has no confidence in the amounts of these withdrawals or if they were actually used for gambling purposes.

Accordingly, taxpayer has not proven any deduction for gambling losses for either 2007 or 2008. Consequently, the court will not apply the *Cohan* rule to estimate gambling losses. No adjustment is warranted for 2007 or 2008.

E.   *Dependency Exemptions*

The court now turns to taxpayer's dependency exemptions. On taxpayer's 2007 return, he claimed himself and one daughter for a total of two dependency exemptions. Taxpayer's accountant testified that taxpayer should have claimed, and was entitled to, additional exemptions for his brother who was dying, his mother who was an invalid, his

---

[13] For example, the activity report for Spirit Mountain Casino for 2008 has the following disclaimer:

"Please be informed that the above information is provided in response to a request by the person shown above. *The activity shown above is associated with the player's club card only. The above figures do not constitute a definite accounting of gaming activity nor do they denote total winnings or losses (only that which was accumulated while using your Coyote Club card). The 'Dollars In' figure may include winnings and may not be an accurate representation of investment. The win/loss amount shown above does not include any hand-paid jackpots.* Please refer to the IRS form W2-G received with the jackpot. We suggest you give this information to your tax advisor and have them advise you on the best way to use this information."

(Emphasis added.) The other reports relied upon by taxpayer have similar statements.

other daughter, and perhaps one other dependent. As previously discussed, the court affords little weight to the testimony of taxpayer or his accountant, and in any event the testimony was not persuasive. The court has no assurance that these individuals were not claimed on another person's tax return, or their own. Taxpayer has not proven he is entitled to the increased dependency exemptions for 2007.

There was no clear testimony about exemptions for 2008. However, even if the court viewed the evidence in a way that treated Ellsworth's testimony on dependency exemptions as applying to both 2007 and 2008, the court would find that no additional dependency exemptions have been proven for 2008.

## V.   CONCLUSION

The court finds that the medical payments were income attributable to taxpayer. The court finds that taxpayer failed to substantiate the losses and expenses claimed for his businesses or rental properties. The court finds that the department proved that taxpayer had income from gambling winnings in the amounts reported on forms W2-G for 2007 and 2008. Taxpayer did not substantiate any gambling losses for 2007 or 2008. The court made no adjustment for dependency exemptions for 2007 or 2008. The penalties assessed by the department were appropriate. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that Defendant has proven gambling winnings in the amounts of $189,208 for 2007 and $223,141 for 2008. Defendant is directed to prepare an appropriate form of judgment.