IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MONICA J. DENHERDER | ) | |
| and CHARLES A. DENHERDER, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 210393R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notices of Assessment for the 2016 and 2018 tax years.

A trial was held remotely on July 19, 2022, via Webex. Plaintiff Monica DenHerder

(DenHerder) appeared and testified on behalf of Plaintiffs. Auditor Cecily Gutierrez (Gutierrez)

appeared on behalf of Defendant. Plaintiffs' Exhibits 1 to 16 and Defendant's Exhibits A to F

were admitted without objection. The parties stipulated ahead of trial that only the 2016 tax year

remained at issue; specifically, Plaintiffs challenged 29 items from Defendant's bank deposit

analysis.

## I.    STATEMENT OF FACTS AND ANALYSIS

The facts of this case primarily concern the source of deposits in Plaintiffs' bank accounts

and Plaintiffs' adjusted basis for personal property that was sold. Defendant found an additional

$77,430 of schedule C gross receipts during a bank deposit analysis.[1] At trial, DenHerder

asserted that 29 of the deposits Defendant relied on for the adjustment to Plaintiffs' 2016 income

represented six different types of non-income events: (1) deposits from the sale of personal

---

[1] The amount stated in Defendant's bank deposit analysis is different than the Notice of Assessment. (Def. Ex E at 1.) The parties did not address this issue at trial, and thus, the court uses the figure in the Notice.

DECISION  TC-MD 210393R                                                                              1

property and equipment; (2) deposits constituting transfers between bank accounts; (3) deposits from loans given by family members; (4) dividends from long-term capital gains; (5) a federal income tax refund; and (6) cash gifts from a family member.

For background, DenHerder testified that she and her family made an abrupt relocation from Alaska to Oregon in May 2013, necessitated by her family members' medical issues. DenHerder explained that because of the speed of the relocation, she did not have a job when they came to Oregon, and they were living on savings. DenHerder testified that in late 2014 or early 2015, Plaintiffs began their Oregon business, Hybrid Woodcrafting LLC, specializing in deck repairs and renovations. Although this business eventually grew, DenHerder testified that when Plaintiffs' finances were tight, they periodically sold personal property they no longer needed in order to pay bills and make ends meet, especially during the off season.

DenHerder also testified that Plaintiffs maintained a few bank accounts for their personal and business activities. DenHerder explained she used a BECU credit union account for her personal banking and two Northwest Credit Union accounts—a business checking account and a business savings account for eventual payment of taxes—for Plaintiffs' Hybrid Woodcrafting LLC business. She also made occasional transfers from her minor daughter's bank account when in a pinch to cover bills, which she reimbursed with interest. She also explained her general practice of trying to get checks received for the business's activities written as payable to the business and checks related to personal activities and personal property payable to her or her husband.

A.    *General Statements of Law*

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining

taxable income of individuals. ORS 316.007(1).[2]  Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. That standard is met by showing that "the facts asserted are more probably true than false[.]" *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

B.    *Schedule C Gross Income Adjustment*

Gross income is defined as "all income from whatever source derived, including (but not limited to) * * * (1) Compensation for services * * *; (2) Gross income derived from business; (3) Gains derived from dealings in property; * * * (7) Dividends * * *." IRC § 61(a). A taxpayer has a duty to keep their financial records to prove their income and deductions. Treas Reg § 1.6001-1(a). "Where a taxpayer's books do not clearly reflect income, the Department of Revenue may demonstrate unreported income 'by any practicable proof that is available in the circumstances of the particular situation.'" *Danielson v. Dept. of Rev.*, TC-MD 160282C, 2017 WL 5158730 at *3 (Or Tax M Div, Nov 7, 2017) (quoting *Brenner v. Dept. of Rev.*, 9 OTR 299, 306 (1983) (citation omitted); *cf U.S. v. Doyle*, 234 F2d 788, 793 (7th Cir 1956)). The department may use additional methods, such as a bank deposit analysis, to determine a taxpayer's unreported income. *Brenner,* 9 OTR at 302 n 2. "The reconstruction need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt v. Comm'r,* 92 TC 661, 687 (1989) (citation omitted). "The bank deposits method is a permissible method of reconstructing income. * * * Bank deposits constitute prima facie evidence of income." *Ekwenugo v. Comm'r*, 102 TCM (CCH) 321, WL 4484788 at *3 (2011) (citations omitted).

---

[2] References to the Oregon Revised Statutes (ORS) are to 2015.

"[T]he taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable." *Id*.

1. *Item 1: radial arm saw*

DenHerder testified the first contested deposit, Item 1, was a radial arm saw she characterized as personal property that Plaintiffs sold in 2016. She indicated that on August 16, 2014, her husband purchased the saw for $350 from a garage sale, and she supported this assertion with a check stub from the purchase that indicates "radial arm saw" in the memo line. (Ptfs' Ex 5 at 1.) DenHerder testified that her husband bought the saw for use in his woodshop. She explained that the saw was never used—and never meant—for Plaintiffs' business because the saw's large size and weight made it unsuitable for moving between jobs, and the saw's design presented too significant a risk to employee safety. DenHerder testified that the saw was never included in their tax returns as depreciable property, and the Plaintiffs sold the saw at a loss to help pay bills. DenHerder provided a copy of a cancelled check dated "8 Jan 2016" from Kent and Susan Miller for $325 made out to Monica DenHerder as proof of the sale of the saw. (Ptfs' Ex 2 at 1; Ex 3 at photo 2.) DenHerder noted the check being made out to her personally, not to the business, further indicated the saw was not related to the business. (*Id*.) Defendant did not offer anything to rebut Plaintiffs' evidence.

Gain on a sale is the amount in "excess of the amount realized * * * over the adjusted basis * * *." IRC § 1001(a). The court finds that the saw was personal property, and it was sold for less than the $350 adjusted basis. Thus, the $325 Plaintiffs received from the sale of the saw is not income.

2. *Items 2 and 23: slab table and related $1300 transfer*

DenHerder testified Plaintiffs had owned a six-foot-long juniper, slab-style coffee table. She explained the table was a piece of furniture Plaintiffs made themselves for their own home,

DECISION  TC-MD 210393R                                                                 4

and they are not in the business of making furniture for sale; they simply needed money to pay bills when they sold it. (Ptfs' Ex 3, photo 6.) DenHerder stated she had emailed the buyers of the table ahead of the trial to verify the purchase and sale price, and they confirmed they purchased the table in 2016 for $1,300. (Ptfs' Ex 8.) DenHerder acknowledged in a follow-up email to the buyers that she had inadvertently misstated the purchase price and implicitly asked for the buyers' help identifying the actual purchase price:

> "I have 2 checks from you in January, but it was on [sic] for $2000 on 1/4/16 and one for $2,600 on 1/22/16[.] I had transferred half of the $2600 ($1300) into my personal account to pay bills but I don't actually have a check for that amount. If you could resend with either amount for the 2016 coffee table that would be great. I do have another one from you in May for $1200 and wasn't sure if it was for your deck or a tool as we had been selling tools that month * * * so if anything sounds familiar great let me know otherwise I'll plug it in as a Hybrid job for May that I hadn't documented correctly."

(*Id.*) The buyers responded they were unable to further confirm the dollar amount of the table bought back in 2016. (*Id.*) In support of her testimony, DenHerder offered her bank statement from her personal checking account showing both a $2,600 deposit and $1,300 transfer on January 22, 2016. (Ptfs' Ex 7 at 2.) She also offered a copy of the cancelled check dated January 22, 2016, made out to Monica DenHerder for $2,600, and she reiterated her practice of requesting personal, non-business checks be made out to her for personal payments unrelated to Plaintiffs' business. (*Id.* at 24). When questioned why the $2,600 check was deposited into one of the business's bank accounts and not her personal account, DenHerder elaborated that there is not an *exclusive* BECU branch for her personal banking nearby. She went to a branch shared by Northwest Community Credit Union and deposited the check. [3] The teller there knows her and customarily deposited checks into the business account instead of her personal account.

---

[3] DenHerder testified that in 2016, Northwest Community Credit Union operated a branch office in central Oregon that also provided services for BECU accounts.

DenHerder testified that it was her own error to not correct the mistake at the time. She further testified that the slab of wood for the table cost at least $1,000; the epoxy material applied to the slab cost at least $600; and the building process, including drying and sanding the wood, took three to four months and more than 150 hours of labor. Based on those inputs, DenHerder estimated it cost Plaintiffs $2,000-$2,200 to make the table, while also acknowledging that Plaintiffs had no documentary evidence to offer in support of that testimony.[4]

It has been long recognized that a court may estimate the amount of expenses that a taxpayer has incurred if there is some evidence of that expense. *See Cohan v. Commissioner*, 39 F2d 540, 543-44 (2d Cir 1930). However, "the rule is limited * * * to situations where the taxpayer has provided sufficient evidence for the court to make a reasoned approximation of the expenses incurred." *Scott v. Dept. of Rev.,* 23 OTR 58, 65-66 (2018), (paraphrasing *Vanicek v. Comm'r,* 85 TC 731, 742-43 (1985)). Pursuant to the *Cohan* rule, DenHerder adequately estimated Plaintiffs' material costs for the table at $1,600. The court finds that Plaintiffs' basis in the table was $1,600 and the selling price was $1,300. Since the table was a personal item, and the sales price was less than the basis, there was no income attributed to the sale of the table.

In looking at the transactions as a whole, the court is persuaded that Plaintiffs received a total of $2,600 from a customer, of which $1,300 represented the sale price of the table, and that amount was transferred to their personal checking account. That finding is supported by DenHerder's testimony that she normally separates sales of personal items and deposits those proceeds into Plaintiffs' personal checking account. In *Koch v. Dept. of Rev.,* TC-MD 160391N, 2018 WL 417966 (Or Tax M Div, Jan 16, 2018), taxpayers transferred same-day checks between

---

[4] Plaintiff seemed to be including a value for labor in their estimate, but that figure was not adequately explained.

their own bank accounts to avoid overdraft charges. In that case, taxpayers' credible testimony and corresponding bank records substantiated the deposits as nontaxable transfers. *Id.* at *4. That analysis applies here, which renders $1,300 as properly included as income and $1,300 as a non-income transfer of funds. Thus, Plaintiffs' gross income should be reduced by $1,300.

        3.      *Items 4, 27, 28, 29, 30:* [5] *deposit from transfer between Plaintiffs' accounts*

DenHerder testified that a $500 deposit made on February 22, 2016, into DenHerder's personal account from Plaintiffs' business checking account was another nontaxable transfer. (Ptfs' Ex 6 at 4; Ex 7 at 4.) DenHerder explained that when a business expense was set to autopay from Plaintiffs' business checking and the account lacked adequate funds and time to add business funds to it, she would transfer personal funds to the business account to ensure the expense would be paid, rather than taking a loan from a financial institution. DenHerder's personal bank account statement indicated that the deposit occurred at a shared branch in Bend, and Plaintiffs' business checking account indicates a withdrawal for the same amount on the same day. Following the standard from the *Koch* case, the court finds this $500 deposit was therefore more likely than not a non-income transfer.

Plaintiffs challenged that contested deposit Item 27 was a deposit initiated by their business's bank to correct an error where $250 was transferred out of the wrong account. The bank reversed the transfer to return the $250 to the account it was wrongly drawn from. Plaintiffs offered a statement from their business checking account showing a June 10, 2016, deposit of $250 identified as "Descriptive Deposit[,] Deposit Correct." (Ptfs' Ex 7 at 9.) Plaintiffs also offered a statement from their personal checking account indicating a $250 deposit

---

[5] Plaintiffs withdrew their challenge of item 3, a check for $820, at the commencement of the trial, which eliminated the need for the court to address this item.

described as "Eff. 05-17 Descriptive Deposit 6/11 * * * transaction reversed in error." (Ptfs' Ex 6 at 10.) Defendant conceded this item during trial. The court finds it more likely than not that the Item 27 $250 deposit was a non-income bank error correction.

Plaintiffs similarly asserted that contested deposit Item 28 was a $1,500 transfer to the wrong account that was subsequently corrected with a transfer to the proper account. Plaintiffs offered their business tax savings account bank statement to show what DenHerder testified was a misdirected $1,500 deposit on July 25, 2016. (Ptfs' Ex 7 at 12; Ex 14 at 1.) She went on to explain that the $1,500 transfer was reconciled in the business checking account. (Ptfs' Ex 7 at 13.) The evidence shows a deposit and withdrawal of $1,500 from one account and a $1,500 deposit to another checking account. The evidence supports DenHerder's testimony, and thus, the court finds that it is more likely than not that the Item 28 $1,500 was counted twice and is not income.

Plaintiffs also argued that contested deposit Item 29 was a $700 transfer from the business tax savings account to the checking account to cover a material shortage for a job where the down payment from the customer was inadequate. DenHerder offered bank statements for the business's savings and checking accounts to show that on August 12, 2016, a $700 transfer was made from the tax savings account to the checking account. (Ptfs' Ex 7 at 14-15; Ex 14 at 1.) The court finds it more likely than not that the Item 29 was a $700 non-income transfer between Plaintiffs' accounts and should therefore be removed from Defendant's adjustment to Plaintiffs' income.

Again, for contested Item 30, Plaintiffs contend that a $1,000 deposit on October 26, 2016, into Plaintiffs' business checking account was a transfer from the business's tax savings account. DenHerder argued it is inappropriate for Defendant's adjustment to include the transfer as income, and she offered bank statements for the business's savings and checking accounts to

show the $1,000 debit from the business checking and credit to Plaintiffs' checking account. (Ptfs' Ex 7 at 16; Ex 14 at 1.) The court finds the $1,000 deposit on October 26, 2016, was a non-income transfer between Plaintiffs' business accounts, and therefore, the transfer must be removed from Defendant's adjustment to Plaintiffs' income.

4.  *Items 6 and 8:* [6] *loans from a family member*

Plaintiffs challenge that a $500 deposit is improperly characterized by Defendant as income. DenHerder testified that on March 11, 2016, a personal loan of $500 was arranged from her daughter's personal bank account to Plaintiffs' personal checking account, which DenHerder supported by copies of the bank statements showing the transaction from the transferring and receiving accounts. (Ptfs' Ex 9 at 1; Ex 6 at 4.)

Similarly, Plaintiffs challenge that on April 17, 2016, Plaintiffs again arranged a personal loan of $450 from their daughter's personal bank account to Plaintiffs' personal checking account, which Plaintiffs contend should not be characterized as income. DenHerder supported her testimony to that effect with copies of the bank statements from the transferring and receiving accounts. (Ptfs' Ex 9 at 2; Ex 6 at 8).

///

///

///

///

///

///

---

[6] Plaintiffs withdrew their challenge of item 5, a deposit of $3,650, at the commencement of the trial, which eliminated the need for the court to hear evidence on this item.

As a general matter, loans are not considered to be income. *See Comm'r v. Tufts*, 461 US 300, 307, 103 S Ct 1826, 75 L Ed 2d 863 (1983). Further, cash loans from family members are not considered income. *Nguyen v. Comm'r*, 111 TCM (CCH) 1600 (2016.) In *Nguyen*, the plaintiff received cash loans from his family. There, the court found deposits were loans based on credible family testimony and supporting documents. *Id.* at *3. Here, as in *Nguyen*, the testimony and supporting documentation indicates a family member made a loan to support the Plaintiffs' business. The court finds the combined $950 of loans is not income to Plaintiffs.

5.      *Items 7, 12, and 14: Boeing quarterly stock dividend*

DenHerder testified that she previously worked for the Boeing Company, and during her employment, the company gave her shares of stock. Plaintiffs supported DenHerder's testimony with a year-end Combined Dividend Payment (2016 Tax Form 1099-DIV) statement showing the quarterly dividends of $19.62 each, for an annual total of $78.48. (Ptfs' Ex 10 at 1.) DenHerder testified that she previously clarified the origin of this deposit with a previous auditor and provided documentation, but Gutierrez, as the fourth auditor involved in this case, might not have been privy to that information. Gutierrez did not dispute the characterization of those payments as dividends from investments, and the court finds they are properly characterized as such and considers them as long-term capital gains as already included on Plaintiffs' 2016 tax return. Therefore, that amount should not be included again as gross income in Schedule C.

6.      *Item 9: Payment from neighbor for yard work and dump fees*

DenHerder testified that Plaintiffs assisted an out-of-town neighbor with cleaning up his nearby property, for which Plaintiffs incurred expenses including dump fees, fuel, and other such costs. She supported her testimony with a copy of a cancelled check #1040 for $503 made out to

Austin DenHerder with "yard work" written in the memo line of the check.[7]  (Ptfs' Ex 2 at 1.)
DenHerder acknowledged that she had no way to estimate what amount of that deposit was
reimbursement versus payment for labor.  While the court has no reason to dispute Plaintiffs'
assertions on this item, it similarly is unable to estimate Plaintiffs' deductible expenses without
sufficient evidence to allow the court to make a reasoned approximation of the expenses
incurred.  *Scott*, 23 OTR at 65-66.  Accordingly, the full $503 deposit is appropriately included
in the adjustment to Plaintiffs' gross income.

       7.     *Item 10: sale of clamps*

DenHerder testified that contested deposit Item 10 is a set of three specialized,
woodworking clamps she characterized as personal property that Plaintiffs sold in 2016.  (Ptfs'
Ex 3 at 3, photo 12.)  She indicated that her husband purchased the clamps from a hardware
store, and she estimated from what she saw for sale on Amazon.com that the two large clamps
would normally be sold on a retail basis for at least $49 each and smaller clamp for
approximately $25.  DenHerder testified that her husband bought the clamps for his
woodworking hobby.  The clamps have no use for Plaintiffs' business, and Plaintiffs sold the
clamps at a loss to help pay bills.  DenHerder provided a copy of a cancelled check dated May
24, 2016, from Mary Martino for $50 made out to Austin DenHerder as proof of the sale of the
clamps.  (Ptfs' Ex 2 at 2.)  Defendant did not offer anything to rebut Plaintiffs' evidence.

Although Plaintiffs sold the clamps, they were sold for less than the presumed $123
adjusted basis.  *See* IRC § 1001(a).  The court finds that the $50 Plaintiffs received from the sale
of the clamps is not income because there was no amount realized over the adjusted basis.

///

---

[7] DenHerder clarified her husband goes by his middle name "Austin," not his legal name, Charles.

8.      *Item 11: sale of Delta belt/disc sander*

DenHerder testified that contested deposit Item 11 relates to the sale of Plaintiffs' Delta belt/disc sander tool. DenHerder clarified that she had intended to offer a picture of the specific sander Plaintiffs sold, but a mistake in the creation of Exhibit 3 caused a picture of the sander to be inadvertently omitted. She estimated that the sander originally cost Plaintiffs $1,894.28, according to what DenHerder saw the sander for sale at on the internet prior to the trial. She offered this evidence in the form of a screenshot from an unspecified website. (Ptfs' Ex 12 at 4.) During cross examination, DenHerder confirmed Plaintiffs do not have a record of the actual purchase price paid for the sander. DenHerder also offered a record from her personal checking account of the transfer on June 10, 2016, for $862.50. (Ptfs' Ex 6 at 10.) However, the transfer deposit includes no identifying information linking the transfer as payment for the sale of the sander, nor was any other evidence offered to substantiate Plaintiffs' basis for the sander. While the court has no reason to dispute Plaintiffs' assertions on this item, Plaintiffs have not met their burden to demonstrate that the $862.50 transfer, which was deposited into DenHerder's checking account, was related to the sale of a sander on which they allege they took a loss. Therefore, the $862.50 deposit is properly included in Defendant's adjustment to Plaintiffs' gross income.

9.      *Item 13: federal tax refund check*

Plaintiffs challenged contested deposit Item 13 asserting it is a non-taxable deposit of Plaintiffs' 2012 federal tax refund from the Internal Revenue Service (IRS).

///

///

///

///

///

They offered a copy of an $817.51 United States Treasury check and an IRS notice of refund due, dated July 4, 2016,[8] indicating that Plaintiffs' net refund due for the 2012 tax year would be $817.51. (Ptfs' Ex 11 at 1.) Plaintiffs submitted documentation from their checking account indicating a $817.51 deposit occurred on June 29, 2016. (Ptfs' Ex 6 at 12.) The court finds the $817.51 deposit is more likely than not Plaintiffs' 2012 federal tax refund and should not be included in Defendant's adjustment to Plaintiffs' gross income for 2016.

10. *Items 15, 16: sales of air movers*

DenHerder testified that contested deposit items 15 and 16 were from the sale of a Drieaze air mover and two large Drieaze dry-out fans she characterized as personal property that Plaintiffs sold in 2016. (Ptfs' Ex 3 at 3, photos 9, 11.) DenHerder explained that Plaintiffs purchased the fans in Alaska where they were essential due to the climate but were not necessary in Oregon. She testified that the items were sold below their basis; however, she provided pictures of suggested prices of the items from the internet at $1,849 and $489 that are lower than her deposits at $2,000 and $650 respectively. (Ptfs' Ex 12 at 2). Although DenHerder's testimony regarding the items being personal property was persuasive, the evidence indicates she sold the items for more than their cost basis, resulting in a $312 modified adjustment to Plaintiff's gross income for 2016.

11. *Item 17: sale of HS928 snow blower and parts*

DenHerder testified that the $2,000 contested deposit item 17 was from the sale of a HS 928 Honda snow blower. (Ptfs' Ex 3 at 3, photo 13.) DenHerder explained that the snow blower was personal property that she sold for less than their cost basis. She provided a picture

---

[8] The notice also states, "if you haven't already received a refund check for $817.51, you should receive it within 2-3 weeks * * *."

advertising the price for the snow blower at $3,099 which supports Plaintiffs contention. (Ptfs'
Ex 12 at 4.) The court finds that the $2,000 Plaintiffs received from the sale of the snow blower
is not income because there was no amount realized over the basis.

12. *Item 18: deposit of gift*

DenHerder testified that the $100 contested deposit item 18 represented a birthday gift
from her mother. She provided a note from her mother as evidence of this item. (Ptfs' Ex 13.)
Defendant did not present evidence to counter Plaintiffs' explanation. Because gross income
does not include the value of property acquired by gift under IRC § 102(a), the court finds the
$100 deposit is not income.

13. *Items 19, 20, 21, 22: deposit from transfer between Plaintiffs' accounts*

DenHerder testified that contested deposit items 19 to 22, in the amounts of $275,
$232.50, $247.50, and $1,000, respectively, represented transfers between Plaintiffs' accounts to
sequester funds to pay taxes. In support of the contention, Plaintiffs provided copies of bank
statements for the accounts which detail same-day deposits and withdraws from Plaintiffs' bank
accounts. In the months in question, there are numerous descriptions identifying the transactions
as "taxes." DenHerder's testimony and documentary evidence support Plaintiffs' contention that
those items represented transfers between accounts and were not income.

14. *Items 24 and 26: cash loans to business*

Plaintiffs challenged two contested deposit items: item 24 is a cash deposit in the amount
of $350 on March 7, 2016, and item 26 is a cash deposit in the amount of $1,100 on June 8,
2016. DenHerder testified that the $350 deposit, made without a description entry, was probably
a loan because she asserts the business had not started operations. That testimony is not
persuasive because there are other contemporaneous transactions that appear to be deposits for
work. DenHerder testified that the deposit for item 26 was likely a transfer from Plaintiffs' tax

account, however, she was unable to locate a corresponding withdrawal. That testimony appears to be no more than a guess and is not supported by the documentary record. The court finds that Plaintiffs have failed to meet their burden of persuasion that $1,450 was improperly characterized as income.

15. *Item 25: sale of Delta spindle sander*

Plaintiffs challenge contested item 25, a deposit for $450 made on May 11, 2016. DenHerder testified that the cash deposit represented the proceeds from the sale of a Delta sander. Plaintiffs were unable to provide any corroborating evidence to support that claim. Unlike many other contemporaneous bank deposits noting they were loans, item 25 contained no description. Plaintiffs offered no receipt for the sale of the sander. Thus, Plaintiffs have not met their burden of persuasion that the cash deposit was not income. The court concludes that the $450 adjustment to income based on item 25 was warranted.

16. *Item 31: down payment for 2017 business contract*

Pursuant to a discussion between the parties that occurred during the trial, the parties are in agreement that contested Item 31, a $3,500 deposit to Plaintiffs' business checking, is properly excluded from Defendant's adjustment to Plaintiffs' income because it pertains to the 2017 tax year. Defendant had not included the $3,500 in its adjustment as developed by Gutierrez. (Def's Ex D at 2; Ptfs' Ex 15 at 1.) Therefore, no adjustment is necessary.

17. *Item 32: sale of Delta jointer and DeWalt planer*

During her presentation of Plaintiffs' challenge of Item 32, DenHerder encountered an evidentiary issue that she could not resolve. Upon acknowledging this, DenHerder clarified that Plaintiffs' challenge of Item 32 was withdrawn.

///

///

### III. CONCLUSION

After careful consideration, the court finds that for the 2016 tax year, Plaintiffs' additional Schedule C gross income is reduced from $77,430 to $63,766. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part. Their Schedule C gross income is adjusted as identified above. Defendant shall recompute Plaintiffs' deduction for self-employment income accordingly.

Dated this _____ day of September, 2023.

 

_____
RICHARD DAVIS
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***This document was signed by Magistrate Richard Davis and entered on September 27, 2023.***